UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Alexander Kleyman, C.P.A.,

                              Plaintiff,          CV-06-3678
                                                  (CPS)
        - against -

                                                  MEMORANDUM
Continental Casualty Company, d/b/a/ CNA,         OPINION AND
                                                  ORDER
                              Defendant.

----------------------------------------X


SIFTON, Senior Judge.

        Plaintiff Alexander Kleyman, C.P.A. ("Kleyman"), commenced

this action against Continental Casualty Co. ("CCC"), Paul Krohn

("Trustee"), as Chapter 7 Trustee of Drake Business Schools

Corporation, The Bronx School for Quality Education, Inc., and

New York School for Quality Education (collectively, "Debtors"),

and Spielman, Koenigsberg & Parker, LLP ("SK&P"), alleging that

CCC had failed to meet its responsibilities for professional

liability coverage under the terms of Kleyman's insurance and

seeking declaratory judgment and damages.[1]  Now before the Court

is CCC's motion for summary judgment.  For the reasons set forth

below, the motion is granted.

--------------------
        [1] At oral argument on December 20, 2006, Kleyman withdrew his complaint
against Trustee and SK&P in order to preserve diversity jurisdiction in his
action against CCC.

**Background**

The following facts are drawn from Kleyman's Complaint and the submissions of the parties in connection with this motion. Disputes are noted.

*Procedural History*

In June 2006, Trustee filed a Complaint ("Trustee Complaint") against Kleyman and SK&P in the United States Bankruptcy Court for the Eastern District of New York. The Trustee Complaint alleged accounting malpractice and professional negligence, beginning in 1999 and lasting into 2004, causing injury to the Debtors. After being notified of the Trustee Complaint, Kleyman contacted CCC, which had provided him with professional liability insurance from 1996 through November 27, 2004. Kleyman sent CCC a copy of the Trustee Complaint, and demanded that CCC assume liability for the claim and provide a defense, under the terms of his insurance. On July 11, 2006, CCC denied coverage on the grounds that Kleyman was not insured for claims against him unless those claims were made and reported during the coverage period, which ended in 2004.

On July 27, 2006, Kleyman filed a complaint ("Kleyman Complaint") against CCC seeking declaratory judgment ordering CCC to provide coverage for the Trustee Complaint, as well as damages.  This motion for summary judgment was filed by CCC on September 18, 2006.

*Insurance Policy*

The policy issued by CCC is a "claims-made" policy.[2]  In such a policy, the insured must both receive notice of a claim made against him *and* provide notice of the claim to the insurance company during the policy period; as the policy states, CCC will cover "damages and claim expenses because of a claim that is *both first made* against [the insured] and *reported* in writing to [CCC] during the policy period." Accountants Professional Liability Policy, p.4 (emphasis added) (hereinafter "Policy").  The policy defines "claim" as "a demand received by [the insured] for money or services naming [the insured] and alleging an act or omission . . . in the rendering of professional services . . . ."

_____

[2] The policy states: "THIS IS A CLAIMS-MADE POLICY.  IT APPLIES ONLY TO THOSE **CLAIMS** THAT ARE FIRST MADE AGAINST **YOU** DURING THE **POLICY PERIOD**.  PLEASE REVIEW THIS POLICY CAREFULLY AND DISCUSS THIS COVERAGE WITH **YOUR** INSURANCE AGENT OR BROKER." Accountants Professional Liability Policy, p.4 (emphasis in original).

This is distinct from an "occurrence" policy, which provides coverage on the basis of the date the liability was *incurred* by the insured as opposed to the date the claim was actually made against the insured.

[including] the service of suit." *Id.* at 2. The policy defines "policy period" as "the period of time from the effective date and time shown in the Declarations and that date and time of termination, expiration or cancellation of this Policy." *Id.* at 3.

## Discussion

*Jurisdiction*

The Kleyman Complaint asserts diversity jurisdiction under 18 U.S.C. § 1332. To bring a claim under diversity jurisdiction, the amount in controversy must be greater than $75,000 and there must be "complete diversity" between parties from different states. *See Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 373 (1978) (complete diversity exists when each defendant is a citizen of a different State from each plaintiff).

As clarified at oral argument on December 20, 2006, Kleyman is domiciled in Florida while CCC is a company incorporated under the laws of New Jersey, with its principal place of business in Illinois. In addition, the amount in controversy is $100,000, the damages alleged in the Kleyman Complaint. Accordingly, there is diversity jurisdiction.

*Summary Judgment*

<u>Standard for Summary Judgment</u>

Summary judgment is appropriate "[w]hen the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Rule 56 of the Federal Rules of Civil Procedure provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Elec. Inspectors, Inc. v. Vill. of E. Hills*, 320 F.3d 110, 117 (2d Cir. 2003). A fact is material when it "might affect the outcome of the suit under the governing law." *Id.*

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *Apex Oil Co. v. DiMauro*, 822 F.2d 246, 252 (2d Cir. 1987). In order to defeat such a motion, the non-moving party must raise a

genuine issue of material fact.  Although all facts and
inferences therefrom are to be construed in the light most
favorable to the non-moving party, the non-moving party must
raise more than a "metaphysical doubt" as to the material facts.
*See Matsushita*, 475 U.S. at 586; *Harlen Assoc. v. Vill. of
Mineola*, 273 F.3d 494, 498 (2d Cir. 2001).

The trial court's function in deciding such a motion is not
to weigh the evidence or resolve issues of fact, but to decide
instead whether, after resolving all ambiguities and drawing all
inferences in favor of the non-moving party, there is a genuine
issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,
249 (1986); *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d
Cir. 2000).  If there is evidence in the record as to any
material fact from which an inference could be drawn in favor of
the non-movant, summary judgment is unavailable.  *Holt v. KMI-
Continental, Inc.*, 95 F.3d 123, 128 (2d Cir. 1996); *Rattner v.
Netburn*, 930 F.2d 204, 209 (2d Cir. 1991).

Choice of Law

Although the parties have not briefed this issue, in a
diversity case, choice-of-law is the first issue a federal court
must address.  A federal court applies the choice-of-law rules of

the state in which it sits to determine which law to apply to the case. *Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487 (1941). In New York State, "the law of the jurisdiction having the most significant contacts and the greatest interest in the litigation will be applied." R.*E. Turner, Inc. v. Connecticut Indem. Co.*, 925 F.Supp. 139, 144 (W.D.N.Y. 1996). In the present context New York law should be applied. In cases involving insurance contracts, New York courts "traditionally resolved choice of law issues . . . by applying the law of the state which the parties understood would be the principal location of the risk." *Snyder v. National Union Fire Ins. Co.*, 688 F.Supp. 932, 934-35 (S.D.N.Y. 1988); *see also Cunninghame v. Equitable Life Assur. Soc. of U.S,* 652 F.2d 306, *308 (2d Cir. 1981) ("if . . . the contract does not have a choice-of-law provision, then the principal location of the insured risk is given particular emphasis in determining the choice of the applicable law).[3] Factors to be considered include "location of the insured risk, residence of the parties, and where the contract was issued and negotiated." *Employers Ins. of Wausau v. Duplan Corp.*, 899 F.Supp. 1112, 1116 (S.D.N.Y. 1995). In this case, the insurance contract was issued to Kleyman while he lived in New York,

---

[3] Nothing provided to the Court describes a choice-of-law provision.

presumably the location of most of his accounting work covered by
the policy; there is no indication the Kleyman moved out of New
York at any point during the policy period or even shortly
thereafter, though he now lives in Florida.  Further, the alleged
malpractice against Debtors which underlies this action occurred
in New York State.[4]  PACE, CCC's claim administrator whose
actions are at issue in this case as well, as described below,
maintains an office in Garden City, New York, from which it
communicated with Kleyman while Kleyman still lived in New York.
No other state has any apparent interest in the litigation beyond
the fact that one of the parties may be citizen of that state.
In such a situation, New York has the most significant contacts
and greatest interest in this litigation. *See Andy Warhol
Foundation for Visual Arts, Inc. v. Federal Ins. Co.,*  189 F.3d
208, 214 (2d Cir. 1999);  *Morgan Stanley Group, Inc. v. New
England Ins. Co.*, 36 F.Supp.2d 605,  606 (S.D.N.Y. 1999); *Snyder
v. National Union Fire Ins. Co.,* 688 F.Supp. 932, 935 (S.D.N.Y.
1988).


Issues in Dispute

---

[4] The plan appears to have been purchased through another organization,
the American Institute of Certified Public Accountants Professional Liability
Insurance Program, based in Pennsylvania, which offers insurance products to
accountants. See www.cpai.com.

In CCC's motion for summary judgment, it argued that under the claims-made policy, Kleyman has no right to coverage with regards to the Trustee Complaint since he did not report the claim while the policy was still active, but only in 2006, almost two years after the policy expired. The law in New York is clear that under a claims-made policy, there is coverage only when a claim is made within the policy period. *See John Paterno, Inc. By and Through Paterno v. Curiale,* 88 N.Y.2d 328, 331 (N.Y. 1996) ("Claims-made policies provide liability coverage only when a claim is made against the insured within the policy period, whereas occurrence policies provide liability coverage for injury or damage that occurs within the policy period without regard to when the claim against the insured is asserted"); *see also Gomez v. Feder, Connick & Goldstein, P.C.,* 260 A.D.2d 348 (N.Y.A.D. 1999).

Kleyman has not disputed the fact that the policy was a claims-made policy and that he did not make the claim during the policy period. Instead, he notes for the first time that the policy also included a clause under which the insured is required to be notified after the termination of his coverage about the importance of purchasing additional coverage. The policy states:

> Within 30 days after termination of coverage, the
> company will give written notification to the named
> insured that the automatic extended claim reporting
> period applies, which notice will state the importance
> of purchasing an additional extended claim reporting
> period, and the premium for such additional coverage. .
> . . The named insured shall have the greater of sixty
> days from the effective date of termination of coverage
> or thirty days from the date of mailing or delivery of
> the notice . . . to submit written notice of acceptance
> of the extended claim reporting period.

Policy, at Policyholder Notice page.  According to an affidavit

submitted by Kleyman, he "never received such notice" and

therefore his policy has not expired.

In response, CCC has provided an affidavit from Justin

Gleicher, who works for PACE, which provides that Gleicher had

"personal knowledge of the facts and circumstances described in

the affidavit."  According to Gleicher, correspondence was sent

to the address on Kleyman's policy on October 1, 2004, informing

him that it was "time to renew" the policy; a copy of the letter

has been provided to the Court.  On December 1, 2004, another

letter was sent informing Kleyman that coverage had expired and

that due to the claims-made nature of the coverage, "all

coverage's [sic] would cease as of the . . . expiration date."

That letter also provided the premiums which would apply should

Kleyman want to sign up for an extended claim reporting period,

which would "provide[] coverage for claims reported after the

expiration date." The letter was sent certified mail with return receipt.[5] A copy of the certified mail receipt, listing Kleyman's address and his signature, have been provided to the Court, along with a copy of the letter which lists the same certified mail article number as is on the receipt.[6] Gleicher also states that the "letters sent by PACE to Kleyman are typical and customary of the letters sent both prior to and after the expiration for all [CCC policies] . . . that are administered by PACE." In addition, according to Gleicher, eight calls were made to Kleyman between November 8, 2004 and December 27, 2004 and messages were left for Kleyman to call and discuss the termination of his coverage; a phone log has been provided to the Court recording the dates of these calls.

In response, Kleyman filed a sur-reply with the permission of the Court in which he argues that the affidavit does not prove that the letters were indeed mailed. Kleyman notes that while

---

[5] Kleyman believes that the December 1 letter is "not relevant" since it was a notification that the policy had lapsed and was "a solicitation for new insurance." However, that letter, as noted above, clearly fulfilled all the contractual requirements. Specifically, it informed him that the automatic extended claim reporting period applies, that his coverage is "claims-made" and ceased as of the November 27, and that "extended reporting period coverage" will provide coverage for claims made after that date. It also included the premiums for such extended coverage. Accordingly, it is highly "relevant" despite Kleyman's assertions to the contrary.
[6] Kleyman has provided no affidavit contesting the authenticity of his signature on the receipt, nor has he in any other way contested the authenticity of this letter.

Gleicher was "responsible for preparing the notices," nowhere in the affidavit does it mention that he himself sent them; rather, the affidavit merely says that "PACE [the administrator of CCC's accounts] sent correspondence to Kleyman.

Proof of Mailing

Under New York law, where proof of mailing is established, a rebuttable presumption is created that a letter was received. *Mount Vernon Fire Ins. Co. v. East Side Renaissance Associates,* 893 F.Supp. 242, 245 (S.D.N.Y. 1995). When such a presumption is created, "[t]he mere denial of receipt does not rebut that presumption. There must be – in addition to denial of receipt – some proof that the regular office practice was not followed or was carelessly executed so the presumption that notice was mailed becomes unreasonable." *Meckel v. Continental Resources Co.*, 758 F.2d at 816. In this case, all that Kleyman has offered is his denial. Therefore, if proof of mailing has been established, his denial is insufficient and there would remain no issues of fact to decide on summary judgment.

In general, proof of mailing under New York law can be established either by testimony from the person who actually did that mailing or "by showing that it was the regular office

practice and procedure to mail such a letter." *Mount Vernon Fire
Ins. Co.*, 893 F.Supp. at 245; *see also Cuva v. U.S. Tennis Ass'n.
Eastern, Inc.,* 2006 WL 2918215, at *12 (N.Y.Sup. 2006) (proof of
mailing can be established by "testimony of the person who
actually mailed the letter or by showing that it was the regular
office practice to mail such a letter").  Such a showing is
established here by Gleicher's statement that the "letters sent
by PACE to Kleyman are typical and customary of the letters sent
both prior to and after the expiration for all [CCC policies] . .
. that are administered by PACE."[7]  This statement is supported
by his assertion of personal knowledge that the practices were
followed in this case, even though he may not have been the
person to actually mail the letters.

In addition, "[a]n addressee's signature on a certified mail
return receipt supports a finding that the addressee received the
notice . . . and the addressee's claim that [he] never received

---

[7] Some cases in New York have required that testimony describe the
office procedures which ensure that the addresses on such letters are correct.
*See, e.g., Vista Surgical Supplies, Inc. v. Allstate Ins. Co.,* 2006 WL
1892274, at *1 (N.Y.Sup.App.Term 2006).  However, in this case the affidavit
demonstrates which address was used and where the address was found.
Moreover, the copy of the letters provided to the Court lists Kleyman's
address and he does not contend that the address was incorrect.
        *Hospital for Joint Diseases v. Nationwide Mutual Ins. Co.,* 284
A.D.2d 374 (N.Y.A.D. 2001), found that the testimony of an employee as to
regular office practices was insufficient.  However, in that case, the court
noted that the employee who submitted the affidavit had no personal knowledge
that the office practices were followed in that case.  In this case, the
affidavit attests that the office practices were followed.

the notice is insufficient to rebut the presumption of receipt
raised by the proof of mailing." *State Farm Mut. Auto. Ins. Co.
v. Kankam,* 770 N.Y.S.2d 714, 716 (N.Y. App. Div. 2004); *see also
Ocean Diagnostic Imaging P.C. v. Travelers Property Cas. Corp.,*
801 N.Y.S.2d 779 (N.Y. App. Div. 2005) ("plaintiff's proof of
mailing of the claims . . . consisting of certificates of mailing
and return receipts, was sufficient to establish actual
mailing").  Here, CCC has provided the Court with a return
receipt whose tracking number matches the tracking number on the
letter sent to Kleyman informing him, as required, of the
termination of his coverage and his options; the authenticity of
that letter and receipt are undisputed.  The receipt also
contains a signature which appears to be Kleyman's.  Although his
attorney suggested at oral argument that one cannot be certain
the signature belongs to Kleyman, Kleyman has not submitted any
affidavit to the effect that the signature was not his, despite
being permitted to file a sur-reply in this case.  Accordingly,
this return receipt with signature supports the presumption that
the December 1 letter was mailed and was in fact received by
Kleyman.

Accordingly, there remain no issues of material fact in dispute and defendant's motion for summary judgment in its favor is granted.

## Conclusion

For the aforementioned reasons, defendant's motion for summary judgment is granted.  The Clerk is directed to enter judgment in favor of defendant and to transmit a copy of the within to all parties.


SO ORDERED.

Dated:     Brooklyn, New York
           January 4, 2007


                    By /s/ Charles P. Sifton (electronically signed)
                       United States District Judge